IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 08-299-01 |
| MALIK SNELL : | |

**SURRICK, J.**                                                                                           **OCTOBER 2, 2008**

### MEMORANDUM & ORDER

Presently before the Court is the Government's Motion *in Limine* to Admit Evidence Under Federal Rule of Evidence 404(b) (Doc. No. 47). For the following reasons, the Government's Motion will be granted.

**I.      BACKGROUND**

On May 27, 2008, the grand jury returned an indictment charging Defendant Malik Snell ("Defendant") and co-defendants Tyree Aimes and Stephon Gibson with conspiracy to interfere with interstate commerce by robbery in violation of 18 U.S.C. § 1951 (Count 1); attempted interference with interstate commerce by robbery in violation of 18 U.S.C. § 1951 (Count 2); possession of a firearm during or in relation to a crime in violation of 18 U.S.C. § 924(c) (Count 3); and aiding and abetting in violation of 18 U.S.C. § 2.

The Government alleges that on or about December 16, 2007, Aimes, Gibson, and an unindicted co-conspirator discussed the fact that a drug dealer named "Keithy" often stored the proceeds of his drug sales in a Pottstown apartment rented by an individual named Sharon Minnick. (Doc. No. 12 at 2-3; Doc. No. 47 at 1-2; Doc. No. 60 at 3.) Defendant Snell, an active-duty Philadelphia Police Officer, drove Aimes and Gibson to Pottstown from Philadelphia in his 2006 White Dodge Durango. (Doc. No. 1 at 3.) Defendant also brought his personal handgun, a

fully-loaded Colt .380 semi-automatic. (Doc. No. 47 at 4.) The three defendants discussed their plans to enter the Pottstown apartment and steal the drug proceeds. (Doc. No. 60 at 4.) When they arrived in Pottstown, Defendant drove slowly past the apartment building, but did not stop because there were two Pottstown Police cars in the parking lot. (*Id*.) The police officers observed Defendant's SUV driving by slowly. (*Id*.)

Defendant drove back to the apartment after the police officers left, and Aimes and Gibson approached the apartment to knock on the door. (*Id*.) When no one answered, they returned to the SUV. (*Id*.) Defendant told Aimes to try again so that they would not have wasted their time driving to Pottstown. (*Id*.) Upon knocking on the door again, Minnick's boyfriend, Steven Stackhouse, answered. (*Id*.) Aimes tried to enter the apartment, but Stackhouse fought him back. (*Id*.) Minnick woke up upon hearing Stackhouse shouting and fighting in the living room. (*Id*.) An unidentified man entered her room, pushed her down, tied her arms, and looked through the bedroom closet. (*Id*.) When he left, Minnick untied herself and ran out of the apartment. (*Id*. at 5.) Meanwhile, Aimes ran back to the Dodge Durango where Defendant was waiting and they drove away. (*Id*. at 4.) Stackhouse called the police from a neighbor's house. (Doc. No. 47 at 3.)

Police officers heard over the police radio that the home-invasion suspects had fled in a large, white SUV. (Doc. No. 60 at 5.) They observed Defendant's white Dodge Durango driving nearby. (*Id*.) Police attempted to pull Defendant's SUV over, but Defendant led police on a high-speed chase. (*Id*.) Defendant's SUV ultimately crashed into a Toyota Matrix, causing injury to the passengers of that car. (*Id*.) Defendant and Aimes ran from the vehicle. (*Id*.) A police canine unit found Defendant hiding in a shed. (*Id*.) When Defendant refused to comply

with police orders to come out, the police sent a dog in to subdue Defendant. (*Id*.) After Defendant was taken into custody, he volunteered that he was a Philadelphia Police Officer who had been carjacked and kidnapped. (*Id*.) Defendant was advised of his *Miranda* rights and he then gave the police officers a signed, written statement. (Doc. No. 47 at 4.) In the statement, he indicated that he had stopped for gas while driving his brother-in-law, Aimes, home when he was carjacked and forced to drive with the carjackers to Pottstown. (*Id*.) He stated that they stopped at an unknown location, the carjackers left the car, returned to the car, and drove off at a high speed. (*Id*.) After the crash, the carjackers forced Defendant into a shed at gunpoint and told him to stay there. (*Id*.)

Defendant retracted this statement two hours later. (*Id*.) Defendant's second signed, written statement explained that he had driven Aimes and Gibson to Pottsdown to pick something up, but that Aimes would not tell him what it was. (*Id*.) After they got to Pottstown, Aimes tried to get inside the apartment twice and was chased to the car after the second attempt. (*Id*. at 5.) Aimes told Defendant to drive away, which Defendant did in a panic. (*Id*.) When the police tried to stop Defendant with their lights and siren on, Defendant accelerated to speeds in excess of 100 miles per hour. The highspeed chase ended with Defendant crashing into another vehicle.

When Aimes was arrested, he told police that he had asked Defendant to drive him and Gibson to Pottstown. (*Id*.) During the trip Aimes told Defendant that the purpose of the trip was to steal drug proceeds from the occupants of an apartment. (*Id*.) Defendant agreed to participate in the robbery scheme. (*Id*.) Aimes told the police that he wanted Defendant to drive because Defendant is a police officer and this would make it less likely that they would be arrested if

3

pulled over by police. (*Id.*) Aimes stated that he and Gibson knocked on the front door of the apartment, but no one answered and they returned to the SUV. (*Id.*) Defendant told them that they should go back and try again, so Aimes and Gibson knocked again. (*Id.*) A man answered the door, and Aimes began fighting with him. (*Id.*) Aimes ran back to the car and drove away with Defendant. (*Id.* at 6.) They circled the block looking for Gibson, but did not see him. (*Id.*) Aimes was arrested after the car chase and crash. (*Id.*)

Aimes and Gibson have agreed to plead guilty. Both are expected to testify at trial for the Government against Defendant Snell.

On September 12, 2008, the Government filed a motion *in limine* to admit the following Rule 404(b) prior bad act evidence against Defendant. (*See* Doc. No. 47.) Drug dealer Keino Herring will testify that he arranged to purchase $170,000 worth of cocaine from drug dealer Hector Jauregui. (*Id.* at 6.) At the same time, Herring hired Defendant, a police officer, to steal back the $170,000 in drug proceeds from Jauregui. (*Id.*) After the drug transaction, Defendant stole the money from Jauregui's drug runner and Herring paid Defendant approximately $50,000 out of the $170,000. (*Id.* at 6-7.) Jauregui will testify that he arranged to sell the cocaine to Herring for $170,000, but that he never received the money because it was stolen from his drug runner. (*Id.* at 7.)

A hearing on the Government's Motion was held on September 19, 2008. (*See* Hr'g Tr. Sept. 19, 2008.) At the hearing, information was offered that Defendant cooperated with the Government against Herring in a separate investigation. (Hr'g Tr. 23.) Defense counsel argued that Herring's testimony was not credible because it is being provided in retaliation for Snell's cooperation against Herring. (*Id.*) Defense counsel also advised the Court that both Herring and

Jauregui have significant prior criminal records which go directly to their credibility. (*Id*. at 13.) Counsel argues that the Rule 404(b) evidence comes from polluted sources, is untrustworthy and unreliable, and should be excluded.

## II.    DISCUSSION

Pursuant to Federal Rule of Evidence 404(b), the Government seeks to introduce at trial evidence of Defendant's prior theft of drug proceeds. Rule 404(b) does not allow evidence of other crimes or acts to be used "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence, however, may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." *Id*. The Third Circuit applies a four-part test to determine whether Rule 404(b) evidence should be admitted: "'(1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402;[1] (3) its probative value must outweigh its potential for unfair prejudicial effect under Rule 403; and (4) the Court must charge the jury to consider the evidence only for the limited purpose for which it is admitted.'" *United States v. Moore*, 375 F.3d 259, 263-64 (3d Cir. 2004) (*quoting United States v. Vega*, 285 F.3d 256, 261 (3d Cir. 2002)); *see also Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).

---

[1] Rule 402 provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Fed. R. Evid. 402.

### A. Proper Evidentiary Purpose

The Third Circuit has recognized that Rule 404(b) is a "a rule of inclusion rather than exclusion." *United States v. Cruz*, 326 F.3d 392, 395 (3d Cir. 2003) (*citing United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir. 1994)). A court may admit prior crimes evidence "'if relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime.'" *United States v. Johnson*, 199 F.3d 123, 128 (3d Cir. 1999) (*quoting United States v. Long*, 574 F.2d 761, 766 (3d Cir. 1978)). The Government offers evidence that Defendant committed a robbery of a drug courier of the proceeds from a drug transaction to prove that Defendant possessed the requisite intent during the charged robbery and to rebut Defendant's "mere presence" defense. (Doc. No. 47 at 9.) Defendant has advised that he will testify that he accompanied Aimes and Gibson to Pottsdown with the understanding that Aimes was owed $500, which amount Aimes in turn owed Defendant. (Hr'g Tr. 17.) Defendant will testify that he had no knowledge of the planned robbery and was merely present because he drove his brother-in-law to Pottstown. (*Id.*)

Many courts have held that the "mere presence" defense places the defendant's intent directly at issue and thus opens the door to prior bad act evidence. *See, e.g.*, *United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004) ("[C]laims of innocent presence or association . . . routinely open the door to 404(b) evidence of other . . . acts."); *United States v. Foster*, 344 F.3d 799, 801 (8th Cir. 2003) (finding that the "mere presence" defense has "long been recognized as placing intent or state of mind into question and allowing the admission of prior criminal convictions to prove both knowledge and intent"). A prior bad act "can be probative of intent because the fact that the defendant had an unlawful intent at the time he committed the extrinsic

6

offense makes it less likely that he had a lawful intent when he performed the acts charged as the present offense." *United States v. McCollum*, 732 F.2d 1419, 1424 (9th Cir. 1984). "A past crime is not relevant to intent unless it required the same form of intent that the Government seeks to prove in the second case." *Id.*

The Eleventh Circuit case of *United States v. Bennett*, 848 F.2d 1134 (11th Cir. 1988), is illustrative. In *Bennett*, police officers arrived at an oceanfront property in Palm Beach, Florida, and observed an unoccupied boat approximately fifty yards offshore. *Id.* at 1136. Looking through binoculars, one of the police officers noticed another boat occupied by two men, one older and one younger, that was approaching the unoccupied boat. *Id.* The younger man on the approaching boat picked up a pair of binoculars, looked at the unoccupied boat, and then turned the binoculars to where the police officers were standing. *Id.* "Almost immediately," the men turned the boat and raced off in the direction from which they came. *Id.* Authorities caught the boat twenty-five miles away. *Id.* The boat had been traveling at its maximum speed, fifty miles per hour. *Id.* The two men, a father and son, told authorities that they were out fishing. *Id.* However, a search of the boat revealed a handgun, a semi-automatic rifle, plastic baggies, and over $100,000 in cash, but no fishing equipment. *Id.* The unoccupied boat held thirty-two duffel bags containing over 750 kilograms of cocaine. *Id.* At trial, the defendants testified that they were simply fishing and diving, that they pulled up to the drug boat in order to assist its occupants, and that they left when they saw that the boat was unoccupied. *Id.* at 1137. To rebut this explanation, the government introduced evidence of the father's prior conviction for conspiracy to import and to possess with intent to distribute methaqualone, as well as evidence of his earlier involvement in a scheme to import cocaine from the Bahamas. *Id.* The defendants

argued that the danger of unfair prejudice from this prior bad act evidence outweighed its probative value. *Id*. The Eleventh Circuit disagreed. *Id*. The court found that "[t]he evidence was especially probative in light of the [defendants'] 'mere presence' defense." *Id*. at 1138. The court observed that both prior offenses were similar to the present offense in that they all involved the importation of narcotics. *Id*. The court concluded that the evidence was particularly probative of intent because "[t]he fact that [the defendant] had engaged in narcotics smuggling on other occasions certainly makes it less likely that his intentions were innocent in this instance." *Id*. at 1137.

In this case, Defendant has opened the door to the introduction of Rule 404(b) evidence through his defense of "mere presence." By testifying that he was in the car with Aimes and Gibson, that he waited for them while they went into the apartment, but that he was not aware of their criminal purpose, Defendant makes his intent a crucial issue in this trial. In order to secure a conviction, the Government must prove beyond a reasonable doubt that Defendant intended to join with his co-conspirators to achieve their criminal objective.

Defendant argues that the Government's introduction of this Rule 404(b) evidence is "just piling on" to its already substantial evidence of Defendant's intent and consciousness of guilt. (Hr'g Tr. 15-16, 18.) Defendant argues that the Government has no need to introduce the prior bad acts in light of its evidence that Defendant led police on a 100 mph car chase, that he hid from police after the chase, and that he subsequently lied to police about the entire situation. (Hr'g Tr. 15-16.) It is interesting to note, however, that there was similar consciousness of guilt evidence against the defendants in *Bennett* where the defendants fled the scene at their boat's maximum speed immediately upon sighting the police officers and then concocted a story about

fishing despite having no fishing gear. Nevertheless, the Eleventh Circuit affirmed the admission of the Rule 404(b) evidence, finding that "[g]iven the [defendants'] explanation of their activities, intent became the central issue in the case." *Bennett*, 848 F.2d at 1137.

In this case, Defendant plans to present an innocent explanation not only for his presence at the scene of the crime, but also his high speed flight from the scene and his subsequent hiding from and lying to the police. Given Defendant's explanation for his conduct, Defendant's knowledge and intent are the central issues in this case. The fact that Defendant had previously been involved in a robbery involving the proceeds from a drug transaction goes directly to that knowledge and intent.

### B. Relevance

Defendant argues that the Government's Rule 404(b) evidence is untrustowrthy and unreliable. (Doc. No. 49 at 3-4.) In order to admit the prior acts evidence the evidence must be relevant. *Huddleston*, 485 U.S. at 689. "[S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id*. In *Huddleston*, the Supreme Court determined that "[s]uch questions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b)." *Id*. Rule 104(b) provides that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Fed. R. Evid. 104(b). The Supreme Court instructed that

> [i]n determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.

9

*Id*. at 690.  Thus, prior bad act evidence may be admitted only "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Id*. at 685.  However, "[t]his reliability threshold is not a high one, and the testimony of a single witness can be sufficient." *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997).

As discussed above, the Government will present the prior bad acts evidence through the testimony of two witnesses who were interviewed separately by the Government and who corroborated each other's stories.  (*See* Doc. No. 47 at 6-7.)  Keino Herring will testify that he arranged to buy cocaine from Hector Jauregui, but that he also hired Defendant to steal the drug proceeds from Jauregui's drug runner after the drug transaction was completed.  (*Id*. at 6.)  Herring will also testify that he paid Defendant out of the stolen drug proceeds.  (*Id*. at 7.)  In turn, Jauregui will testify that he sent cocaine to Herring via a runner, but that he never received the drug proceeds.[2]  (*Id*.)  The proposed testimony from these witnesses is consistent and

---

[2] Jauregui can certainly testify that he talked to Herring and agreed to sell Herring $170,000 worth of cocaine.  However, Jauregui's knowledge of the circumstances of the robbery come from both his own runner and Herring, who Jauregui apparently spoke to on the phone during or immediately after the robbery.  (*See* Doc. No. 51 at 6 n.4.)  Herring pretended that he did not have anything to do with the robbery.  (*Id*.)  Jauregui is expected to testify to out-of-court statements made by his runner and by Herring.

Rule 801(d)(2)(E) provides that a statement is not hearsay if it is offered against party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  For an out-of-court statement to satisfy this exception,

> "the district court must find by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy."

*United States v. Weaver*, 507 F.3d 178, 181 (3d Cir. 2007) (*quoting United States v. Ellis*, 156 F.3d 493, 496 (3d Cir. 1998)).

Based upon the Government's proffer, a conspiracy existed between Herring and Defendant to steal the proceeds of a drug sale involving Jauregui.  Statements made by Herring,

mutually corroborative.

We recognize that both of the Government witnesses have prior criminal records for crimes of dishonesty.  Moreover, Defendant's cooperation with the Government in a separate investigation of Herring provides a motive for Herring to lie.  However, as *Huddleston* instructs, it is not for this Court to weigh the credibility of the Government's Rule 404(b) witnesses or to determine whether the Government has established that the prior bad act occurred.  We simply review the evidence to determine whether the jury could reasonably find that Defendant committed the prior bad act.  In this case, if the Government's witnesses are believed, the jury could certainly find that the prior bad act occurred and that the Defendant was the actor. Defendant will, of course, have the opportunity to attack the credibility of the Government's witnesses through cross-examination.  It is for the jury to determine whether these witnesses are to be believed.

Under Rule 402, prior bad acts must also be relevant to an issue at trial.  Fed. R. Evid.

---

therefore, may be testified to by Jauregui because Herring and Defendant were members of the conspiracy.  Statements made by Jauregui's runner, however, must be excluded.  *See United States v. Morrow*, 39 F.3d 1228, 1235 (1st Cir. 1994) (finding that under Rule 801(d)(2)(E), the defendant must be "a member of the *same* conspiracy that generates the hearsay statement"). Herring's statements were made during the course of the conspiracy because the goals of the conspiracy, splitting up the money, had not yet been accomplished.  *See United States v. Knuckles*, 581 F.2d 305, 313 (2d Cir. 1978) ("[I]t is fair to say that where a general objective of the conspirators is money, the conspiracy does not end, of necessity, before the spoils are divided among the miscreants.").  In addition, Herring's statements were made in furtherance of the conspiracy because they were made to conceal his ongoing participation in the conspiracy and Defendant's ongoing participation in the conspiracy.  *United States v. Pecora*, 798 F.2d 614, 630 (3d Cir. 1986) ("'[A] vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime.'" (*quoting Grunewald v. United States*, 353 U.S. 391, 405 (1957))).  Accordingly, we will permit Jauregui to testify as to Herring's statements, but not the runner's statements, regarding the robbery.

402. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probably than it would be without the evidence." Fed. R. Evid. 401. Clearly this bad act evidence is relevant to Defendant's knowledge and intent and his defense of "mere presence."

### C.    Rule 403 Balancing

Even if Rule 404(b) evidence is both relevant and probative of something other than Defendant's character, the Court may not admit the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403; *see also Huddleston*, 485 U.S. at 691. Factors to consider in performing Rule 403 balancing in the Rule 404(b) context include:

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

1 KENNETH S. BRAUM ET AL., MCCORMICK ON EVIDENCE § 190 (6th ed. 2006).

In this case, there is strong evidence that Defendant participated in the prior offense. The Government offers two witnesses who, independently of each other, offered identical reports of Defendant's prior criminal behavior. Moreover, although the two crimes are not identical, courts have found that "a much lower degree of similarity is required to prove a state of mind than to prove identity." *United States v. Nelson*, 137 F.3d 1094, 1107 (9th Cir. 1998); *see also United States v. Fields*, 871 F.2d 188, 197 (1st Cir. 1989) ("[A] 'much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity' than when it is introduced for another of the myriad reasons

allowable under Rule 404(b)." (*quoting United States v. Myers*, 550 F.2d 1036, 1045 (5th Cir. 1977))).  Indeed, the "past conduct need not be identical to the conduct charged, but instead need only be similar enough to be probative of intent." *Johnson*, 132 F.3d at 1283.  Here, the probative value of the Rule 404(b) evidence is strong because both crimes are robberies and in both crimes Defendant conspired with others to steal the proceeds of drug sales.  The same intent is at issue in each offense.  *See McCollum*, 732 F.2d at 1424 ("In this case . . . [the defendant's] prior conviction was for armed robbery, an offense requiring the same intent as the attempted robbery here charged.").  Moreover, the approximately four-year gap between the prior offense and the charged offense does not render it too remote.  *See, e.g., United States v. Ross*, 510 F.3d 702, 713 (7th Cir. 2007) ("Having occurred within five and six years of the charged robbery, the prior bad acts are not too remote in time.")

  In addition, as noted above, the Government's need for the prior acts evidence is strong because Defendant is prepared to present an innocent explanation for his actions, which places his intent directly at issue.  We recognize that the Government has alternative proof of his intent, including Defendant's post-robbery behavior and the testimony of his co-conspirators.  However, Defendant will attempt to explain away the car chase and his lies to the police, which will make his intent the main issue at trial.  The testimony of his co-conspirators, meanwhile, is "vulnerable to attack" because of the credibility concerns stemming from their own criminal behavior.  *See United States v. Dorta*, 157 F. App'x. 197, 201 (11th Cir. 2005) (finding that, despite testimony from co-conspirators, the government's need for prior act evidence to challenge the defendant's "mere presence" defense was strong because "the credibility of these co-conspirators was 'vulnerable to attack'").

Finally, Defendant's prior offense is not a "shocking or heinous crime likely to inflame the jury." *United States v. Moccia*, 681 F.2d 61, 64 (1st Cir. 1982).  Defendant argues, however, that "[t]his is exactly the type of evidence in which a jury would be very hard pressed not to brand the defendant as a person of 'bad character' and a 'dirty cop' who, therefore, must be guilty of the offenses charged." (Doc. No. 49 at 6.)  We recognize that when admitting prior bad act evidence there is always a risk that the jury will consider the evidence for an improper purpose, that is, Defendant's propensity to commit the crime charged.  This risk can be mitigated by careful limiting instructions to the jury.  We are satisfied that the probative value of the prior act evidence outweighs the danger of unfair prejudice.

### D.  Limiting Instruction

Consistent with *Huddleston*, we will offer limiting instructions both at the time that the evidence is admitted and in the final jury instructions.  *See Cruz*, 326 F.3d at 396 ("[T]he district court met the fourth requirement for admission of Rule 404(b) evidence by carefully providing the jury with limiting instructions both immediately after [the prior bad act evidence] testimony and also during the jury charge.").  The limiting instruction will include the Third Circuit Model Criminal Jury Instruction 2.23, which deals with the limited purpose for which Rule 404(b) evidence may be considered by the jury.

### III.  CONCLUSION

For these reasons, we will grant the Government's Motion *in Limine* to Admit Evidence Under Federal Rule of Evidence 404(b).

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 08-299-01 |
| MALIK SNELL | : | |

**ORDER**

AND NOW, this 2nd day of October, 2008, upon consideration of the Government's Motion *in Limine* to Admit Evidence Under Federal Rule of Evidence 404(b), (Doc. No. 47), and all papers submitted in support thereof and in opposition thereto, and after hearing in open court, it is ORDERED that the Motion is GRANTED.

IT IS SO ORDERED.

BY THE COURT:

/s/ *R. Barclay Surrick*
U.S. District Judge