IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 08-299-01 |
| MALIK SNELL | : | |

**SURRICK, J.**                                                    **OCTOBER 10, 2008**

<u>**MEMORANDUM & ORDER**</u>

Presently before the Court is the Government's Motion to Disqualify Defense Counsel

(Doc. No. 50).  For the following reasons, the Government's Motion will be denied.

**I.      BACKGROUND**

Defendant Malik Snell is charged with conspiracy to interfere with interstate commerce

by robbery in violation of 18 U.S.C. § 1951 (Count 1); attempted interference with interstate

commerce by robbery in violation of 18 U.S.C. § 1951 (Count 2); possession of a firearm during

or in relation to a crime in violation of 18 U.S.C. § 924(c) (Count 3); and aiding and abetting in

violation of 18 U.S.C. § 2.  Trial is scheduled to begin on Thursday, October 16, 2008.

 On October 2, 2008, this Court granted the Government's motion in limine to admit Rule

404(b) evidence of Defendant's prior participation in the robbery of drug proceeds.  (*See* Doc.

No. 68.)  The Government intends to introduce this evidence through the testimony of two

witnesses, Keino Herring and Hector Jauregui.  (*See* Doc. No. 47.)  Drug dealer Herring will

testify that he arranged to purchase $170,000 worth of cocaine from drug dealer Jauregui.  (*Id*. at

6.)  At the same time, Herring hired Defendant, a police officer, to steal back the $170,000 in

drug proceeds from Jauregui.  (*Id*.)  After the drug transaction, Defendant stole the money from

Jauregui's drug runner and Herring paid Defendant approximately $50,000 out of the $170,000. (*Id*. at 6-7.)  Jauregui will testify that he arranged to sell the cocaine to Herring for $170,000, but that he never received the money because it was stolen from his drug runner.  (*Id*. at 7.)

On September 18, 2008, in anticipation of the Court's ruling on the Rule 404(b) evidence, the Government filed a Motion to Disqualify Defense Counsel.  (*See* Doc. No. 50.)  It appears that several years ago defense counsel John McMahon represented the Government witnesses, Herring and Jauregui, in two completely separate and unrelated matters.  We held a hearing on September 19, 2008, and McMahon advised the Court that he had represented Jauregui after he was arrested in 2003 in Montgomery County on an identity theft or credit card charge. (Hr'g Tr. 19, Sept. 19, 2008.)  McMahon negotiated a plea of guilty for time served with probation.  (*Id*.)  McMahon has not had any contact with Jauregui since that time.  (*Id*.) Regarding Herring, McMahon stated that although he could not find his file, he recalled that he represented Herring in a simple probation violation matter in 2003 in Montgomery County.  (*Id*.) McMahon had not had any contact with Herring since that time until he encountered Herring at Defendant Snell's arraignment.  (*Id*. at 19-20.)  Coincidentally, Herring was being arraigned on separate drug charges in the same courtroom.  (*Id*. at 20.)  McMahon said "hello" to Herring, but nothing beyond that.  (*Id*.)  This chance encounter between Herring and Defendant prompted Herring to approach the Government with information about Defendant's prior bad acts.  (*Id*.)

McMahon advised that he does not have any information as a result of his representation of these two individuals that could be used to cross-examine them, nor does he have any privileged information.  (*Id*. at 21.)  He stated that he would cross-examine Herring and Jauregui with the same type of material that any other lawyer would use, such as their prior criminal

2

record for crimes of dishonesty, their cooperation with the Government in order to reduce their sentences, and their friendship with each other.  (*Id.*)  McMahon further advised that he had discussed this potential conflict of interest with his client, informed him of the dangers of such conflicts, and informed him that he could have another lawyer.  (*Id.* at 22.)  Snell advised McMahon that he wanted McMahon to continue to represent him.  (*Id.* at 22-23.)  In addition, McMahon noted that because Defendant is a police officer, he is very familiar with the criminal justice system.  (*Id.* at 22.)

The Court addressed Defendant on the issue of a potential conflict of interest arising from defense counsel cross-examining witnesses that he had represented on prior occasions.  (*Id.* at 30.)  The Court advised Defendant that McMahon owes a duty of loyalty to him, but also to his prior clients.  (*Id.*)  The Court also advised Defendant that he has an absolute right to have an attorney free of conflict and that the Court could appoint another lawyer or Defendant could retain another lawyer.  (*Id.*)  Defendant advised the Court that McMahon has been his attorney from the beginning of his case and that he wants McMahon to remain as his attorney throughout the trial even though there may be a conflict.  (*Id.* at 32.)

## II.   DISCUSSION

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend VI.  "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him."  *United States v. Gonzalez-Lopez*, 549 U.S. 140, 144 (2006).  The Supreme Court has explained that the Sixth Amendment right to counsel provision commands "not that a trial be fair, but that a particular guarantee of fairness be provided – to wit,

that the accused be defended by the counsel he believes to be best." *Id*. at 146.  Therefore, the

Court held that "if counsel is wrongly disqualified, the defendant is granted *automatic* reversal

on appeal, notwithstanding the fact that the ensuing trial was by all accounts fair." *United States*

*v. Liszewski*, No. 06-130, 2006 U.S. Dist. LEXIS 59608, at *25 (E.D.N.Y. Aug. 16, 2006)

(*referencing Gonzalez-Lopez*, 548 U.S. 140).  Nevertheless, "[t]he Sixth Amendment right to

chose one's own counsel is circumscribed in several important respects." *Wheat v. United*

*States*, 486 U.S. 153, 159 (1988); *see also Gonzalez-Lopez*, 548 U.S. at 151 ("Nothing we have

said today casts any doubt or places any qualification upon our previous holdings that limit the

right to counsel of choice . . . .").

        In *United States v. Moscony*, 927 F.2d 742 (3d Cir. 1991), the Third Circuit observed that

the Sixth Amendment guarantee of effective assistance of counsel "'includes two correlative

rights, the right to adequate representation by an attorney of reasonable competence and the right

to the attorney's undivided loyalty free of conflict of interest.'"  *Id*. at 748 (*quoting United States*

*v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988)).  While a defendant may waive his right to

conflict-free counsel, a court has discretion to refuse such a request if it concludes that either an

actual conflict of interest or a serious potential for a conflict of interest exists.  *Moscony*, 927

F.2d at 750.  "Conflicts of interest arise whenever an attorney's loyalties are divided and an

attorney who cross-examines former clients inherently encounters divided loyalties." *Id*.  This is

so because ethical rules prevent lawyers from revealing confidential information of former

clients and from using any information relating to their representation of former clients to

disadvantage their former clients.

        In *Moscony*, the court addressed a successive representation situation where the defense

4

attorney sought to represent a defendant at trial after having represented several individuals during the grand jury investigation phase who were to testify as government witnesses. *Id*. at 747. The court was concerned that the attorney could use information obtained from his former clients to cross-examine and impeach them, but that he could not do this without revealing information "related to" his representation of them. *Id*. at 750. The court noted that the information discussed between counsel and his former clients would be the subject of their testimony and his cross-examination. *Id*. The court found that defense counsel "owed a duty to his former clients not to reveal this information." *Id*. at 751. Moreover, the court recognized that one of defense counsel's former clients was "a key government witness under an immunity agreement whereby she could still be prosecuted if the government felt she had testified untruthfully." *Id*. at 750.

"The fear in successive representation cases is that the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information." *Moss v. United States*, 323 F.3d 445, 460 (6th Cir. 2003). The risk of misuse of privileged information is more pronounced where defense counsel's earlier representation of the witness is substantially related to counsel's later representation of the defendant. *See, e.g.*, *United States v. Wheat*, 813 F.2d 1399, 1402 n.1 (9th Cir. 1987) ("A substantial relationship between successive representations often triggers concerns about divided loyalties and conflicts of interest."); *United States v. Collins*, No. 08-047, 2008 U.S. Dist. LEXIS 39848, at *4 (N.D. Ohio Apr. 21, 2008) ("[T]o establish an actual conflict of interest, the Government must show: (1) that the defendant's attorney's 'earlier representation of the witness was substantially and particularly related to counsel's later representation of the defendant,' or (2) that the defendant's attorney

'actually learned particular, confidential information during the prior representation of the witness that was relevant to defendant's later case.'" (*quoting Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987))); *United States v. Lemieux*, 532 F. Supp. 2d 225, 230 (D. Mass. 2008) ("In cases of 'successive representation, conflicts of interest may arise if the cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties.'" (*quoting Mannhalt v. Reed*, 847 F.2d 576, 580 (9th Cir. 1988))); *United States v. Pizzonia*, 415 F. Supp. 2d 168, 178 (E.D.N.Y. 2006) ("The majority of cases that have found a conflict of interest arising from prior representation of a witness involve substantially related representations, where the danger of divided loyalties or revealing client confidences is at a maximum."); *id*. ("Limited representation of a government witness unrelated to representation of the defendant is not likely to present a disabling conflict."). Moreover, Rule 1.9(a) of the Pennsylvania Rules of Professional Conduct provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in *the same or a substantially related* matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." Pa. Rules of Prof'l Conduct 1.9(a) (emphasis added).

McMahon's prior representation of Herring and Jauregui are not in any way related to the criminal offense with which Defendant is now charged. Therefore, McMahon's prior representation will not inform his defense strategy, nor will it limit or restrain his cross-examination. McMahon has in interest in impeaching the credibility of the Government witnesses and will use the witnesses' significant criminal records to do so. However, this is exactly what any defense attorney would do. The Government is fully aware that its witnesses

are drug dealers who have had frequent encounters with the criminal justice system.  Indeed, the Government provided this Court with copies of Herring and Jauregui's criminal histories, which are matters of public record.  *See Pizzonia*, 415 F. Supp. 2d at 179-180 (finding in a successive representation case that "[t]he material for effective cross-examination is well known.  [The former client's] extensive criminal history and motives for acting as a cooperating witness were explored at the hearing and are matters of public record").  Thus, McMahon's cross-examination and impeachment will not otherwise adversely affect his former clients.  Moreover, Herring and Jauregui's interests are further protected because McMahon has advised that he does not have any privileged information from his prior representations that could be used on cross-examination.  In addition, even if McMahon did retain some confidences, such confidences are entirely unrelated, factually and legally, to Defendant's defense.  Since any confidences from the prior representation are not relevant to the current case, the concern that McMahon could use privileged information to Defendant's advantage and to the disadvantage of McMahon's former clients is minimal.

At the hearing, Defendant waived his Sixth Amendment right to a conflict-free attorney.  There is no question but that Defendant's waiver was voluntary and intelligent.  Defendant fully understands that McMahon will be cross-examining his former clients, to whom McMahon owes a duty of loyalty, and Defendant understands that he has an absolute right to an attorney free of conflict.  Defendant understands that this Court would appoint new counsel if Defendant so desired and that he is free to retain another lawyer of his choice.  Knowing all of this, Defendant has advised that he wants McMahon to continue to represent him.

We are satisfied that, in this case, the right of Defendant to have counsel of his choice is

not outweighed by the danger of prejudicial conflict.  The Government's Motion to Disqualify

Counsel will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 08-299-01 |
| MALIK SNELL | : | |

## **ORDER**

AND NOW, this 10th day of October, 2008, upon consideration of the Government's
Motion to Disqualify Defense Counsel, (Doc. No. 50), and after hearing in open court, it is
ORDERED that the Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

_R. Barclay Surrick, Judge_